**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RICHARD DE LA T.,**[1]   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | **CIVIL ACTION** |
| v.   ) | |
| ) | **No. 20-1070-JWL** |
| **ANDREW M. SAUL,**   ) | |
| **Commissioner of Social Security,**   ) | |
| ) | |
| **Defendant.**   ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation and explanation of Plaintiff's alleged mental impairments and his failure to address the affect Plaintiff's age has on the alternative step five finding, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent herewith.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

**I.     Background**

Plaintiff filed applications for DIB and SSI benefits on June 27, 2017.  (R. 20, 263).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in finding Plaintiff could perform his past relevant work as generally performed in that he failed properly to assess Plaintiff's mental limitations because he erred in finding the medical opinion of Plaintiff's treating mental healthcare provider unpersuasive and erred in considering Plaintiff's allegations of mental limitations.  He claims that the ALJ's alternative finding that he could perform other light, unskilled occupations in the economy also fails because the ALJ did not explain how the fact he was within six months of "advanced age" would not result in a finding he was disabled in accordance with the Medical-Vocational Guidelines (the grids).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

All the errors alleged by Plaintiff relate to RFC assessment between steps three and four, or to later in the sequential evaluation process.  Because the court finds error in the RFC assessment, the Commissioner on remand must perform another RFC

assessment and reevaluate steps four and five of the process. Therefore, the court may not provide an advisory opinion regarding the other errors alleged by Plaintiff. He may address these alleged errors to the Commissioner on remand, if desired.

## I. Discussion

As Plaintiff argues, the ALJ found that Plaintiff has the medically determinable mental "impairments of adjustment disorder, depression, [and] anxiety," but that these "mental impairments results in only 'mild' limitations in the 'paragraph B' criteria" and are, therefore, not severe within the meaning of the Act and the regulations. (R. 23-24). The ALJ noted that "the 'paragraph B' criteria are not a residual functional capacity assessment" and stated the RFC he assessed "reflects the degree of limitation [he] has found in the 'paragraph B' mental function analysis." Id. at 24. The ALJ assessed no mental limitations in the RFC assessed. Id. at 26 (finding no. 5).

In his step four evaluation, the ALJ found that Plaintiff's past relevant work as a parts manager was light, skilled work with an SVP (specific vocational preparation) level of 7 and Plaintiff was capable of performing that occupation as generally performed in the economy. Id. at 31. The ALJ noted that Plaintiff "was born on July 21, 1964 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date,[2]" and made an alternative finding that, given the RFC

---

[2] In his original application for SSI, Plaintiff alleged a disability onset date of October 1, 2014, and on the date alleged he was 50. (R. 263). However, as the ALJ recognized, he "amended the alleged onset date to September 13, 2017." (R. 20). On the amended alleged onset date of disability, Plaintiff was 53.

assessed, Plaintiff is able to perform other work in the economy represented by the light, unskilled (SVP 2) jobs of Collator Operator, Electrical Assembler, and Router.  Id. at 32.

The essence of Plaintiff's claim is (1) that given his mental impairments he is unable to perform skilled work at an SVP of 7 (eliminating his past relevant work), and (2) that he became 55 years old (advanced age as defined in the regulations) just over four months after the ALJ's decision and would then "grid out" as disabled in accordance with Grid Rule 202.06.  The court agrees.  Issue (1) above is controlled by this court's recent decision in Leah A. D. v. Saul, No. 19-1223-JWL, 2020 WL 2849475 (D. Kan. June 2, 2020), and issue (2) is controlled by the court's recent decision in James S. v. Saul, No. 19-1203-JWL, 2020 WL 2218780 (D. Kan. May 7, 2020).

A mental impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922.  This is what the ALJ found when he found Plaintiff's mental impairments not severe.  "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 148 (Supp. 2020).

The SSA has identified 14 basic mental abilities needed for any job, POMS DI 25020.010(B)(2), available online at, https://secure.ssa.gov/poms.NSF/lnx/0425020010 (last visited Nov. 19, 2020), specific aspects of which are critical for performing unskilled work. Id. DI 25020.010(B)(3). The agency recognizes that semiskilled and skilled work require the 14 basic mental abilities noted above and often present "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." Id. DI 25020.010(B)(4) (bold in original). The agency recognizes that in semiskilled and skilled work "[o]ther special abilities may be needed depending upon the type of work and specific functions it involves." Id.

Here, the ALJ found Plaintiff's mental impairments are not severe because they cause no more than mild limitations in the four mental functional areas and, by implication, have no more than a minimal effect on his abilities to perform basic mental work activities. And the ALJ found that Plaintiff is able to perform his past relevant work as a parts manager, which requires the second-to-the-highest specific vocational preparation level (7), and he stated he had compared the mental demands of that work with Plaintiff's RFC. (R. 31). But there is no record evidence stating the actual, specific mental abilities demanded by that work (beyond the general statement of an SVP of 7) and there is no discussion in the decision at issue or in the hearing colloquy between the ALJ and the vocational expert regarding the increased mental abilities required to

perform the job and no specific discussion or finding that Plaintiff has mental abilities greater than those necessary to perform basic mental work activities.

While it may be that Plaintiff retains the mental abilities to perform work as a parts manager, if any, which are greater than the basic mental abilities required to perform unskilled work, this court does not know what they are and the ALJ failed to address that issue.  The court is aware that it is the Commissioner's responsibility—the ALJ's in this case—to assess RFC, and to compare a claimant's RFC with the mental demands of a job, and the court may not substitute its judgment for that of the Commissioner.  However, in a case such as this where the ALJ has not explained the ambiguities or material inconsistencies created by his evaluation of the record evidence, remand is necessary for a proper evaluation, unless the ALJ's alternative finding is a proper basis alone to justify a finding of not disabled.  It is not.

Born on July 21, 1964, Plaintiff was 53 (closely approaching advanced age) on his amended alleged onset date of disability, September 13, 2017, and was 54 (also closely approaching advanced age) on March 8, 2019, the date the ALJ's decision issued.  However, Plaintiff entered the next age category (advanced age) on his 55th birthday, July 21, 2019, four months and 13 days after the decision issued.  An ALJ should not apply an age category in the grids mechanically.  20 C.F.R. §§ 404.1563(b), 416.963(b); POMS DI 25015.006, (available online at, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006 (last visited November 19, 2020); HALLEX I-2-2-42(C), (available online at, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html (last visited November 19, 2020) ("ALJs will not use the higher age category automatically in a borderline age

situation."). The regulations require that if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. §§ 404.1563(b), 416.963(b).

A "borderline age situation" exists where application of a claimant's chronological age would result in finding no disability, the claimant's age is "within a few days to a few months" of the next higher age category, and application of the higher age category would result in finding disability. HALLEX I-2-2-42(B); POMS DI 25015.006(C). "Generally, SSA considers a few days to a few months to mean a period not to exceed six months." Id. I-2-2-42(B)(1); see also POMS DI 25015.006(B). In considering whether to use the next higher age category, a sliding scale is used, "The closer in time the claimant is to the next higher age category, the more disadvantageous the claimant's age." Id. I-2-2-42(C)(1); see also POMS DI 25015.006(E). In applying the sliding scale, the SSA will consider the impact of each of the grid factors (RFC, age, education, and work experience) for both the chronological age category and the next higher age category and determine whether the overall impact justifies use of the higher age category. Id. I-2-2-42(C); see also POMS DI 25015.006(E).

Assuming without deciding that the RFC assessed here (containing no mental limitations) adequately accounts for the mild limitations the ALJ found Plaintiff to possess in each of the four broad mental functional areas such that Plaintiff is mentally capable of performing the light, unskilled (SVP 2), representative jobs the vocational

9

expert suggested and the ALJ relied upon, Plaintiff is nonetheless in a borderline age situation.  However, the ALJ did not even acknowledge that a borderline age situation exists in this case.  He certainly did not explain how he applied the sliding scale to determine that Plaintiff's condition does not justify use of the higher age category.

Remand is necessary for the Commissioner properly to explain his consideration of these two issues.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent herewith.

Dated November 19, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**